R.A. AUGUSTINE d/b/a SOUTH SHORE INSURANCE, SOUTH SHORE BUILDING AND MORTGAGE COMPANY AND SOUTH SHORE SECURITIES CORPORATION AND THIRTEEN HUNDRED BROADWAY CORPORATION, AN INDIANA CORPORATION, AND FRANK L. KORPITA AND MARY AGNES KORPITA, HUSBAND AND WIFE; HOBART COUNTRY CLUB DEVELOPMENT CORPORATION, AN INDIANA CORPORATION; TITLE CORPORPORATION; AND NORMAN LEVENBERG AND _____ LEVENBERG, HIS WIFE, WHOSE TRUE CHRISTIAN NAME IS UNKNOWN *v.* FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GARY AND BUCKEYE UNION INSURANCE COMPANY AND EICHEL LOVELACE AND PATRICIA LOVELACE

[No. 3-375A49. Filed March 7, 1978. Rehearing denied April 13, 1978. Transfer granted January 15, 1979.]

598

*Albert C. Hand, Michael L. Muenich, Lowell E. Enslen, Herbert E. Boase,* of Hammond, for appellants.

*Borns, Quinn, Kopko & Linquist,* of Merrillville, *Dale Custer, Fred M. Cuppy,* of Gary, for appellees.

STATON, P.J.—Eichel and Patricia Lovelace purchased real estate from Thirteen Hundred Broadway Corporation under a conditional sales contract. Thirteen Hundred Broadway Corporation had mortgaged the real estate prior to the contract sale to First Federal Savings and Loan Association of Gary. The building on the real estate had been insured with Buckeye Union Insurance Company by R.A. Augustine, an agent, d/b/a South Shore Insurance Company, South Shore Building and Mortgage Company, and South Shore Securities Corporation. The insurance expired on December 5, 1971. After the insurance expired, the building on the real estate was destroyed by fire on December 12, 1971.

Lovelaces sued Thirteen Hundred, First Federal, Augustine, and Buckeye, alleging that one or more of the defendants negligently failed to notify Lovelaces of the expiration of the insurance. Augustine filed third-party actions against First Federal and Buckeye. First Federal and Buckeye moved for summary judgments; the motions for summary judgments were granted. Later, First Federal filed a couterclaim for foreclosure on the mortgage and a motion for summary judgment against Thirteen Hundred. First Federal's motion for summary judgment was granted by the trial court. This appeal arises from the granting of the two motions for summary judgment for First Federal and the granting of the summary judgment for Buckeye.

Ind. Rules of Procedure, Trial Rule 56(C) provides in pertinent part that:

"The [summary] judgment sought shall be rendered forthwith if the pleadings, *depositions*, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." (Emphasis added.)

We emphasize the fact that summary judgment shall be rendered *if* the evidence, including depositions, shows that there is no genuine issue as to any material fact. Summary judgment is appropriate only where there clearly are no factual issues in the case. *See Linton v. Linton* (1975), 166 Ind. App. 409, 336 N.E.2d 687.

Without unduly burdening this opinon with a recitation of the issues being litigated in this complex suit (most relate to negligence or breach of implied or expressed contracts), we point out that several instruments (mortgages, contracts, insurance policies) were subject to interpretation by the trial court. However, to be considered in conjunction with those instruments were the actions and agreements of many parties. The parties recorded, via deposition testimony, several hundred pages of evidence pertaining to the inter-relationships between the parties and their respective duties (expressed or implied). Yet, at the time Augustine filed his praecipe for appeal (*after* the summary judgments had been rendered and *after* the motions to correct errors had been denied) the depositions were still sealed. They were still sealed when they reached this Court. Clearly, the trial judge erred in granting summary judgment without considering all of the available evidence.

Our cursory review of part of the deposition testimony reveals that many genuine issues of material fact *are* in dispute.[1] Therefore,

---

1. Judge Garrard concludes in his dissent that Buckeye was entitled to a summary judgment in its favor. However, in reaching that conclusion, Judge Garrard did not open the depositions. Within the depositions is testimony which raises a significant question concerning the *apparent authority* of South Shore, the *reliance of the Lovelaces* upon Buckeye, and the delegation of *duty to notify*. Genuine issues of material fact exist; summary judgment was inappropriate.

the summary judgments are reversed, and the cause is remanded for trial.

Buchanan, J., concurs;

Garrard, J., concurs in part and dissents in part with opinion.

OPINION CONCURRING IN PART AND DISSENTING IN PART

GARRARD, J.—In this multi-party, multi-claim litigation the seller and the insurance agent have appealed adverse rulings which granted summary judgment on some of the claims.

The basis of the litigation arises from the destruction of a building by fire shortly after the fire insurance covering it expired. The various claims seek to fix responsibility for the fire loss which was suffered, except one which seeks a mortgage foreclosure. While the following is an oversimplification of the claims and course of proceedings, I believe it accurately presents the issues raised on appeal.

The building in question had been sold on contract to Mr. and Mrs. Lovelace (the purchasers) by Thirteen Hundred Broadway Corporation (the seller). It remained subject to a mortgage in favor of First Federal Savings and Loan Association of Gary (the lender). Prior to the fire the building had been insured through South Shore Insurance (the agent).[1] This policy was issued by Buckeye Union Insurance Company (the insurer). The policy expired December 5, 1971. The insurer had previously cancelled the agent's authority to write insurance for it and had determined to not renew the policy.[2] The fire loss occurred on December 12th.

On January 6, 1974, the purchasers brought suit against the seller, the lender, the agent and the insurer. Subsequently, on plaintiff's motion, the insurer was dismissed as a party. The seller then cross-complained against the lender and the agent.[3] The gist of these claims was that the defendants tortiously and in breach of contract

---

1. The devolution of this business into three entities, while perhaps significant in some aspects of the litigation, has no special bearing on the present issues. For the sake of brevity, they are referred to simply as the agent.

2. The agent continued, by a special agency agreement, to collect premiums on existing insurance.

3. Again the insurer was named and subsequently dismissed with prejudice.

either failed to renew the fire insurance or failed to notify the claimant of the expiration of the old policy and that insurance should be procured.

Then the lender filed a counterclaim against the seller and purchaser asserting default and seeking foreclosure of its mortgage.

Finally, the agent cross-complained against the lender and the insurer claiming it was entitled to indemnity and the expenses it incurred in litigation.

In the orders appealed from, the trial court granted summary judgment to the lender foreclosing the mortgage. It also granted summary judgment against the agent on its two cross claims and against the seller in its claim against the lender.

The majority reverses all these rulings upon the potential existence of material factual issues and the failure of the trial court to consider a number of depositions which were on file at the time of its rulings.

I concur with this result regarding three of the rulings, although it appears to me that the majority fails to consider an issue which must be confronted to reach its result. I find that the ruling on the agent's claim against Buckeye was correctly made, and I dissent from its reversal.

At the outset, it should be noted that we are dealing with the alleged failure of the trial court to *consider* a number of depositions that were on file in the case. If that be true it is the potential existence of genuine issues of fact relevant to decision that is the hallmark of error.

I agree that the potential for factual issues exists in the claims of the seller and the insurer against the lender. While the existence of the note and mortgage as well as the debt and default are undisputed, even the foreclosure claim appears to contain factual issues since equity may intervene to prevent acceleration and foreclosure. *Moore v. Sargent* (1887), 112 Ind. 484, 14 N.E. 466.

Appellants argue and the majority correctly observes that the various depositions were still under the original seal when transmitted to this court on appeal. Upon that basis the majority reverses.

However, in my view before it may legitimately do so, a further question must be answered. Were the depositions properly before the court for its consideration at the time it ruled?

An examination of the briefs and transcript reveals that while the depositions were taken and deposited with the court, as of the time of the court's rulings no order had been made or requested for their publication. Were they then "on file" within the meaning of TR. 56 when the court ruled?

In a summary judgment case decided before the adoption of the 1970 rules of civil procedure, this court held that until they were "published," depositions were not properly a part of the record before the court. *Swartzell v. Herrin* (1969), 144 Ind. App. 611, 248 N.E.2d 38.

The court in *Swartzell* was bound by and relied upon Acts 1881 (Spec. Sess.) ch. 38, § 306 (Burns Ind. Anno. Stat. § 2-1520) which provided that after filing, depositions might be published at the request of either party. That statute[4] was repealed by the Acts of 1969 in conjunction with the adoption of the new rules of civil procedure. The new rules make no reference to "publication" as a significant act. They are, however, comprehensive in their treatment of the taking and use of depositions focusing upon other factors as operative events. Moreover, I can perceive no valid reason outside the rules for maintaining "publication" as a legally significant event. It is rather an anachronism and should be dispensed with. Accordingly, I would expressly overrule *Swartzell* and hold the depositions in the present case were properly before the court.

However, the agent's cross claim against the insurer is different. It sought to assert that Buckeye was liable to the agent for any damages the agent might be held for on the claims against it. The theory of the claim was that the principal is liable for the acts done by the agent in proper pursuit of the agency.

The materials on file describe that Buckeye terminated the agent as a general agent some two and a half years before the policy

---

4. One subsequent section dealing with depositions to perpetuate testimony was retained. It provides taxing the cost of the deposition to the party seeking its publication. *See* IC 34-1-16-1.

expired in December 1971. At that time the agent was limited to collecting premiums on policies already issued and making indorsement changes in those policies to reflect such things as changed addresses, changed loss payees, etc. The agent was expressly prohibited from either renewing or writing new policies for the insurer. There is no contention that Buckeye wrongfully cancelled the policy in question or that there was an implied contract for renewal. The policy was terminated according to the expiration date. It did not contain a renewal clause. In short, there is no issue asserting that Buckeye committed a legal wrong in terminating the coverage when the policy contract expired.

The agent's principal contention is that it was acting as agent for Buckeye in the termination and therefore it is entitled to indemnity. This allegation must fail.

Assuming that the agent acted as Buckeye's agent in terminating the policy, there is no contention that Buckeye had no right to terminate. The potential liability for which the agent seeks indemnity arises either from the failure to notify proper parties of the termination or the failure to secure other insurance. In the latter instance, clearly Buckeye was not a principal for the agent. In the former it was the agent who gave, or failed to give the notice. If his negligence created the loss, he is not entitled to indemnity from the principal. If Buckeye had an independent duty to give notice, it is at most a joint-tortfeasor. And since our Supreme Court and legislature have failed to recognize rights of contribution among joint-tortfeasors, the agent has no right to indemnity.

There were no genuine issues of material fact in South Shore's claim against Buckeye, and Buckeye was entitled to judgment as a matter of law. The summary judgment in its favor should be affirmed.

NOTE—Reported at 373 N.E.2d 181.