R. A. AUGUSTINE d/b/a South Shore Insurance, South Shore Building and Mortgage Company and South Shore Securities Corporation, and Thirteen Hundred Broadway Corporation, an Indiana Corporation, and Frank L. Korpita and Mary Agnes Korpita, husband and wife, Hobart Country Club Development Corporation, an Indiana Corporation, Title Corporation, and Norman Levenberg and _____ Levenberg, his wife, whose true Christian name is unknown, Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GARY, and Buckeye Union Insurance Company, and Eichel Lovelace and Patricia Lovelace, Appellees.

No. 179S10.

Supreme Court of Indiana.

Jan. 15, 1979.

Albert C. Hand and Michael L. Muenich, Hand, Muenich & Rodovich, Hammond, for appellants.

Peter G. Koransky, of Spangler, Jennings, Spangler & Dougherty, Gary, for appellee.

GIVAN, Chief Justice.

## OPINION ON PETITION TO TRANSFER

In May, 1959, Eichel and Patricia Lovelace purchased real estate from Thirteen Hundred Broadway Corporation under a conditional sales contract. The property had previously been mortgaged to First Federal Savings and Loan Association of Gary. The building on the land was insured with Buckeye Union Insurance Company by R. A. Augustine, an insurance agent, doing business as South Shore Insurance, South Shore Building & Mortgage Company, and South Shore Securities Corporation. The insurance policy expired on December 5, 1971, and seven days later the building was destroyed by fire.

The Lovelaces brought an action against Thirteen Hundred Broadway Corporation, First Federal Savings and Loan Association, R. A. Augustine (d/b/a South Shore Insurance), and Buckeye Union Insurance Company in January, 1972. Plaintiffs dismissed with prejudice their complaint against Buckeye in October, 1972. Then, in January, 1974, defendant South Shore filed a third party complaint against Buckeye and First Federal. The trial court granted summary judgment in favor of Buckeye and First Federal on the third party complaint and also granted a summary judgment in favor of First Federal on a counterclaim against Thirteen Hundred for foreclosure on the mortgage. The Court of Appeals reversed all three summary judgments on the ground that the depositions taken in the case manifested genuine issues of material fact. *Augustine v. First Federal Savings & Loan Association of Gary* (1978) Ind.App., 373 N.E.2d 181. The Court of Appeals noted that the trial court had not opened these depositions and thus erred in not considering all of the available evidence. Only Buckeye had petitioned this Court to transfer the cause and, therefore, we consider only the summary judgment motion that relates to Buckeye.

Initially, we must consider a procedural question not addressed by the Court of Appeals, except by Judge Garrard in his dissenting opinion: That is, whether publication of the depositions was required to place them properly before the court for consideration in ruling on the motions.

In 1881, the legislature enacted the following statute:

"Publication, when had.—Depositions, after being filed, may be published by the clerk, at the request of either party, after giving the other, his agent or attorney, reasonable notice of the time of publication, or they may be published by order of the court, on the motion of either party." Burns 2–1520.

The courts in Indiana have applied and utilized this rule through the years in various situations. See *Mitten v. Kitt* (1888) 118 Ind. 145, 20 N.E. 724; *Stamets v. Wilson* (1928) 89 Ind.App. 403, 164 N.E. 300. The most recent case addressing the issue of publication of depositions was *Swartzell v. Herrin* (1969) 144 Ind.App. 611, 248 N.E.2d 38. In that case, the trial court had granted the defendants' motion for summary judgment. The motion itself referred to the depositions of the plaintiffs and the trial court purportedly took these into consideration. However, the depositions were never published. The Appellate Court, after quoting from the statute, correctly held:

"In order for a conditional examination to become part of the record or to be before the court for its use, the conditional examination must be published. This is done by order of the court upon motion of any person or party interested.

Publication means the breaking of the sealed envelope containing the conditional examination and making it available for use by the parties or the court.

In this case no order of publication was made. The conditional examinations were not published, as evidenced by the fact that they remained sealed in their envelopes. Thus, they clearly could not have been a part of the record before the court on the motion for summary judgment."

144 Ind.App. at 617–8, 248 N.E.2d at 42.

In 1969, nonetheless, the legislature removed this statute from the books when the new rules of civil procedure were enacted. The precise reasons for this deletion are unclear.

 Nevertheless, this Court has authority to adopt rules of procedure governing the conduct of litigation in our judicial system. *State ex rel Blood v. Gibson Cir. Ct.* (1959) 239 Ind. 394, 157 N.E.2d 475. The procedural rules and cases decided by this Court take precedence over any conflicting statutes. IC § 34–5–2–1 [Burns 1973]; *Matter of Public Law No. 305 and Public Law No. 309* (1975) 263 Ind. 506, 334 N.E.2d 659.

 In the case at bar, the majority of the Court of Appeals did not address the question of whether publication of the depositions was required. That court broke the seals on the depositions that had been filed, read them, and determined that contained therein was testimony which raised a genuine issue of material fact between Buckeye and South Shore regarding the apparent authority of South Shore, the reliance of the Lovelaces upon Buckeye, and the delegation of the duty to notify. 373 N.E.2d at 183 n.1. Accordingly, the Court of Appeals reversed the trial court's sustaining of the motions for summary judgment. Judge

Garrard, however, in his dissenting opinion, states that the new rules of civil procedure fail to make publication of depositions a significant event and states, "Moreover, I can perceive no valid reason outside the rules for maintaining 'publication' . . . It is rather an anachronism and should be dispensed with." *Augustine v. First Federal Savings & Loan Association of Gary* (1978) Ind.App., 373 N.E.2d 181, 184 (Garrard, J., dissenting).

We disagree with this conclusion. We hereby hold that publication of a deposition is still required in order to place the deposition before the court. Until the deposition is published, by order of the court upon a motion of either party, the deposition cannot be taken into account by the court in ruling on any motions of the parties.

There is a sound and practical reason for requiring publication. Under our rules, at the time a deposition is taken, a party need not object to questions on the basis of inadmissibility. Rather, TR. 32(B) permits a party to wait and make his objection at the trial or hearing when the deposition is read into evidence or otherwise used. Were we to dispense with the publication requirement, the very essence of TR. 32(B) could not be implemented. Trial judges could examine depositions at will without regard to the possibility that they might contain objectionable matter.

Moreover, IC § 34–1–16–1, 2 [Burns 1973] (formerly Burns §§ 2–1527 & 2–1528) have been continued in the present code in their original form as enacted in 1881. These statutes recognize the publication requirement and tax the costs of publication to the moving party. It may be inferred from these two statutes that the General Assembly did not purposely eliminate the publication requirement in its 1969 enactment. Indeed, the language of IC § 34–1–16–1 that a deposition "may, at any time . . . be published by order of the court" is identical to portions of Burns § 2–1520 heretofore quoted. We, therefore, hold that before a trial court can consider testimony in depositions either in ruling on motions or at the trial the depositions must be published.

In the case at bar, the depositions were not properly published. No motions to publish were ever filed; no stipulation of the content of the depositions by contesting parties was ever filed; and none of the depositions or their content were verified to the trial court by affidavit. In oral argument before this Court, counsel for South Shore indicated that there were affidavits in the record which verified the depositions. However, we have diligently searched the record and no such affidavits appear. We must presume counsel was mistaken and was referring to the affidavit which verifies only the limited agency agreement. In fact, the only materials relating to the depositions that were before the trial court were the briefs and memoranda in support of and in opposition to the various motions for summary judgment. No affidavits accompanied these documents. Hence, the Court of Appeals erred in breaking the seals on these depositions, and the trial court did not err in failing to open, examine, and utilize their content in ruling on the motions for summary judgment.

We must determine, then, from the pleadings of Buckeye and South Shore and their limited agency agreement (which was verified by affidavit and attached to Buckeye's motion for summary judgment), whether Buckeye was entitled to summary judgment as a matter of law. The facts to be considered are not in dispute.

In December, 1968, R. A. Augustine, doing business as South Shore Securities Corporation, issued a policy of insurance on the real estate. The insurer was Buckeye Union Insurance Company. By its own terms, the policy expired December 5, 1971. On April 1, 1969, Buckeye executed a limited agency agreement with South Shore which provided for a run-off of the agency's business with Buckeye. Under this agreement, the agent South Shore was limited to collecting premiums on policies already issued and making indorsement changes in those policies. The agency was given no authority to issue new policies for Buckeye and the agency relationship was to terminate automatically upon the expiration of all insurance contracts issued through Buckeye by South Shore before the cancellation of the general agency agreement.

The third party complaint of South Shore against Buckeye was premised on (1) the failure of Buckeye to notify the insureds that the policy would terminate on December 5, 1971, and (2) the failure of Buckeye to procure other insurance for the insureds. The trial court granted summary judgment for Buckeye. The Court of Appeals reversed. In our view, Judge Garrard, in his dissenting opinion, correctly analyzed this aspect of the case and concluded that South Shore was not entitled to indemnity from Buckeye.

First, Buckeye was not required to notify the Lovelaces that the policy was to terminate. Under the terms of the policy, the coverage expired on December 5, 1971. The policy had no renewal provision and furthermore South Shore had no authority under the limited agency agreement to renew the policy. Clearly, if any duty to notify the Lovelaces existed, it fell upon South Shore, not Buckeye. And any breach of this duty cannot be imputed to Buckeye. *Automobile Underwriters, Inc. v. Hitch* (1976) Ind.App., 349 N.E.2d 271.

Second, with regard to the failure of Buckeye to procure other insurance for the Lovelaces, the third party complaint shows that South Shore wrote insurance policies for various insurance companies, including Buckeye. South Shore, therefore, was a broker under IC § 27–1–15–1(d) [Burns 1975]:

"(d) The word 'broker,' as used in this article [27–1–15–1—27–1–15–9], shall mean an individual, copartnership, or a corporation authorized by its charter or by law to do an insurance agency business, resident in any state, and not an officer or agent of the company interested, who or which for compensation acts or aids in any manner in obtaining insurance for a person other than himself, themselves or itself . . .

*An insurance broker is hereby declared to be the agent of the insured for all purposes in connection with such insur-*

*ance.* The interchange of business between agents shall not be interpreted to require the agent to qualify as a broker." (Emphasis supplied.)

Hence, South Shore was the agent of the Lovelaces and if there was any duty to procure other insurance for them, that duty would again fall upon South Shore, not Buckeye. A breach of such a duty cannot be imputed to Buckeye. *Automobile Underwriters, Inc. v. Hitch, supra.*

 Furthermore, an agent is entitled to indemnity from his principal only when the actions of the agent are within the scope and authority of the agency relationship. *Avery Co. v. Herriot-Carithers Co.* (1924) 81 Ind.App. 348, 143 N.E. 304. Here, the terms of the limited agency agreement restricted the agency to collecting premiums and making indorsement changes on existing policies. It is clear that the failure to notify regarding termination of the policy and the failure to procure other insurance were outside the scope of the agency relationship. If anything, the duties to notify and procure other insurance were devolved upon the agent, not the principal. Under such circumstances, South Shore is not entitled to indemnity from Buckeye.

We have not opened or examined the depositions in this case, and we, therefore, express no opinion as to whether South Shore would be entitled to indemnity had the depositions been properly published. We hold only that the Court of Appeals should not have considered the depositions in reviewing the judgment of the trial court, and that considering only the pleadings and the affidavit attached to Buckeye's motion for summary judgment, the trial court did not err in granting the motion.

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals as it relates to Buckeye's motion for summary judgment, and affirm that portion of the trial court's decree.

` HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result without opinion.

PIVARNIK, J., not participating.