David J. HARRIS, D.D.S.; G. Walter Erickson, M.D.; and Charles W. Magnuson, M.D., Individually and as Constituting the Board of Trustees of an Unincorporated Association of Partnership doing business under the firm name and style the South Bend Clinic; and the South Bend Clinic, an unincorporated association or partnership, Defendants-Appellants,

v.

Romana PRIMUS, M.D.,
Plaintiff-Appellee.

No. 3–882A211.

Court of Appeals of Indiana,
Third District.

June 20, 1983.

Rehearing Denied Aug. 1, 1983.

Arthur A. May, May, Oberfell, Helling, Lorber & Campiti, South Bend, for defendants-appellants.

Timothy W. Woods, South Bend, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

In September of 1976, Dr. Romana Primus became an associate partner in The South Bend Clinic, a group of physicians engaged in the group practice of medicine and dentistry in South Bend, Indiana. When Dr. Primus joined the Clinic, the following agreement was executed:

"ASSOCIATE PARTNER AGREEMENT

The undersigned acknowledges that she has been invited to become an associate partner in the group of physicians and surgeons operating under the name and style of 'The South Bend Clinic'.

The undersigned accepts such invitation and agrees:

1. To have no interest in said partnership, except the right to compensation of $30,000 for and during the one year period beginning the 1st day of September, 1976, or income per partnership formula, whichever is greater. The check for September will be $2,500.00, with adjustment to the September income to be made at the end of 1976 based on the partnership formula.

2. To be bound by all of the terms including supplements and amendments of the partnership agreement, dated the 24th day of June, 1968, a copy of which is attached hereto.

3. If the undersigned shall choose not to become a full partner, or if the members of the partnership shall not invite the undersigned to become a full partner within 13 months of the date set out in Item 1 above, then, the undersigned agrees that she will not practice medicine or surgery for a period of one year from the 1st day of September, 1977, within the area contained in a circle drawn with a radius of 50 miles of the location of the main building used and occupied by the partnership.

4. Three examining rooms, one consulting room, and a waiting room within the immediate area, will be provided upon completion of the Clinic addition.

5. The South Bend Clinic will purchase, at a mutually agreed price, the furniture, equipment, and supplies presently located at 2314 Miami Street, South Bend, Indiana as per inventory submitted.

6. The South Bend Clinic agrees to assume responsibility for the expenses incurred in Dr. Primus' move from 2314 Miami Street to the South Bend Clinic building.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and seal this 28th day of July 1976.

/s/ Romana R. Primus MD (SEAL)"

*Record* at 650.

One amendment to the partnership agreement referred to in item number 2 of the agreement signed by Dr. Primus was made in 1974 and contained the following provision:

" 'DEATH, RESIGNATION OR REMOVAL OF MEMBER

4. Any member may resign and withdraw as a member of this partnership at any time upon giving written notice to the Board of Trustees hereto, provided, however, that any partner who resigns, retires, becomes disabled or withdraws from the partnership agrees that he will not practice medicine or surgery for a period of one year from the effective date of resignation, retirement, disability or withdrawal within the area contained in a circle drawn with a radius of fifty miles of the location of the main building used and occupied by the partnership or agrees that he will pay in cash to the partnership an amount equal to fifty per cent (50%) of his earnings for the fiscal year next preceding the year of resignation or withdrawal, or the sum of Twenty-five Thousand Dollars ($25,000.00), whichever is the larger, as liquidated damages, as may be determined by a majority of the remaining members and provided further that both the restriction and the liquidated damages may be waived if a majority of four-fifths (⅘ths) of the remaining members so agree upon the request of such resigning, retiring, disabled or withdrawing partners.' "

*Record* at 609.

At the time the associate partnership agreement was prepared and presented to Dr. Primus, the partnership agreement and its 1974 amendment were attached to it.

On September 29, 1977, Dr. Primus gave written notice of her intent to withdraw from the Clinic, which became effective December 5, 1977. Following Dr. Primus' resignation from the Clinic, she set up a practice of medicine a few blocks away from the Clinic and continues to practice there.

Dr. Primus filed an action against the Clinic for damages and for an accounting

alleging breach of their agreement. The Clinic filed an answer which included a cross-claim against Dr. Primus seeking $25,-000 in liquidated damages and alleging Dr. Primus breached their agreement by practicing medicine within a 50 mile radius of the Clinic following her withdrawal. Subsequently, Dr. Primus entered into a stipulation and dismissal of her complaint.

Included in Dr. Primus' answer to the Clinic's cross-claim was a cross-claim for a declaratory judgment asking the trial court to declare the restrictive covenant in the agreement unenforceable as to Dr. Primus. The Clinic then joined in requesting a declaratory judgment and asked the trial court to declare the covenant valid and enforceable with the result that Dr. Primus owed the Clinic $25,000 in liquidated damages.

Trial was had on the declaratory judgment issue as to the enforceability of the covenant and the liquidated damages. The trial court entered a judgment in favor of Dr. Primus and against the Clinic.

The Clinic brought this appeal from the judgment and presents the following issues for review:

(1) whether the trial court erred in holding the restrictive covenant in the partnership agreement to be unenforceable;

(2) whether the trial court erred in holding that the Clinic breached the partnership agreement thereby preventing it from enforcing the agreement as to Dr. Primus; and

(3) whether the trial court erred in holding that the restrictive covenant in the associate partner agreement was inconsistent with the restrictive covenant contained in the partnership agreement therefore rendering the restrictive covenant and liquidated damage provision unenforceable.

It is first important to note that Dr. Primus has asserted both in her appellate brief and during oral argument before this Court that the Supreme Court of Indiana in *Augustine v. First Fed. Sav. & L. Ass'n of Gary* (1979), 270 Ind. 238, 384 N.E.2d 1018

determined that a trial court may consider deposition testimony once the deposition is ordered published, and it is not necessary that the deposition be admitted into evidence.

Dr. Primus' interpretation of *Augustine* is completely erroneous. The Supreme Court merely held in *Augustine* that before a trial court can consider testimony in depositions, either in ruling on motions or at the trial, the depositions must be published. That holding presents no change in the procedural trial rules or the case law in Indiana.

■ The publishing of a deposition simply means the breaking of the seal on the deposition and making it available for use. *Augustine, supra;* 3 Bobbitt's Revision, Works' Ind.Prac. § 35.4, at 38. Discovery evidence, like any other, must be admitted into evidence in order to be considered. *See Bowling v. Holdeman* (1980), Ind.App., 413 N.E.2d 1010. A trial court can only try issues upon evidence which is properly brought before it and placed in the record. A reviewing court is bound by that record on appeal. *Board of Zoning App. etc. v. La Dow et al.* (1958), 238 Ind. 673, 153 N.E.2d 599.

■ It is well settled in Indiana that the judgment of a trial court made pursuant to findings of fact and conclusions of law will not be set aside by the Court of Appeals unless those findings were clearly erroneous. *In re B.C.* (1982), Ind., 441 N.E.2d 208. The trial court in this instance found that the restrictive covenants were too broad and were unenforceable. It also found that the Clinic failed to establish its protectable interest in keeping Dr. Primus from practicing and failed to establish $25,000 as a reasonable forecast of damages.

■ As a general rule, where the nature of a contract is such that a breach would result in damages which are uncertain and difficult to prove, and the parties to the contract have fixed an amount of liquidated damages which is not greatly

disproportionate to the loss likely to occur, then that fixed sum will be accepted as liquidated damages and not as a penalty. Agreements not to engage in a particular profession are especially adaptable to provisions for liquidated damages, because it is often practically impossible to fix the exact amount of damages resulting from a breach of such an agreement. Absent any evidence to show that the amount of damages claimed is unreasonable, such a stipulation for liquidated damages will be acceptable. *Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276.

■ In the instant case the trial court found that the Clinic failed to document any basis upon which an amount of $25,000 could be a reasonable forecast of damages. This was not necessary for it to do. That is the purpose of a liquidated damages clause; to agree on an amount in a situation where damages resulting from a breach cannot be readily determined. The trial court made no finding that the $25,000 was unreasonable, and there is no evidence in the record to support such a finding.

To the contrary, the Clinic did present evidence of Dr. Primus' revenues while with the Clinic, which was an obvious loss to it when she left. There was also evidence of the great lengths to which the Clinic went to accomodate Dr. Primus when she joined. For example, the Clinic financed the move of her staff and equipment, rearranged the space occupied by existing physicians in order to meet her special requests, and included her requirements in the construction plans for a new building addition. When she withdrew, the Clinic was left with her overhead but no income from it.

There was no evidence to show that the $25,000 amount was unreasonable or grossly disproportionate to the amount of actual damages suffered, and there was an abundance of evidence to show that it was reasonable. In fact the Supreme Court of Indiana recently approved the same amount as liquidated damages under similar circumstances. *Raymundo, supra.* The trial court erred in making such a finding.

However, regardless of the enforceability of the liquidated damages provision, the Clinic's recovery depends upon the validity of the covenant not to compete. If the applicable covenant is void, no recovery results.

■ Non-competition covenants are in restraint of trade and are not favored by the law. They are enforceable only when the restraint is reasonably necessary to protect the covenantee, not unreasonably restrictive of the covenantor and not against the public interest. *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235; *Grand Union Tea Co. v. Walker* (1935), 208 Ind. 245, 195 N.E. 277; *Waterfield Mortgage Co., Inc. v. O'Connor* (1977), 172 Ind.App. 673, 361 N.E.2d 924; *Frederick v. Professional Building Main. Indus. Inc.* (1976), 168 Ind.App. 647, 344 N.E.2d 299. The determination of the reasonableness of the covenant is a question of law for the court but it must be made upon the basis of the facts and circumstances surrounding each case. It depends upon a consideration of the legitimate interests of the covenantee which might be protected and the protection granted by the covenant in terms of time, space and the types of activity or conduct prohibited. *Frederick, supra.* Although, the Supreme Court of Indiana did recently approve of such covenants existing within the setting of a medical clinic. *Raymundo, supra.*

■ The trial court here found that the Clinic failed to establish a protectable interest in enforcing the covenant against Dr. Primus. The Clinic was an established entity in South Bend. When Dr. Primus and the Clinic negotiated her membership, the Clinic accommodated her in every way including guaranteeing her at least a $30,000 salary. While with the Clinic her practice and accordingly her income increased dramatically.

The trial court found that at all times material to the dispute Dr. Primus limited her medical practice to the treatment of adult allergies. We can find no evidence in the record of the hearing to support such a finding. The only evidence regarding Dr.

Primus' practice shows that she practiced pediatrics as well as pediatric and adult allergies. Other doctors with the Clinic also practiced in these areas.

The members of the Clinic who spent years and money developing the Clinic had a legitimate and realistic desire to protect not only their investment in Dr. Primus but also to restrict her competition with them once she left the Clinic. They have a protectable interest in enforcing the covenant against Dr. Primus and presented evidence to establish that fact.

The trial court also found that the restrictive covenants were too broad, both geographically and in scope. The covenants prohibited the practice of medicine or surgery within a 50 mile radius of the Clinic.

The scope of the Clinic's practice included all areas of medicine or surgery which Dr. Primus had practiced. This is supported by the record. Therefore, the scope of the prohibition contained in the covenants was not only reasonable, it was understandably necessary.

Likewise, the geographical limitation was supported by both the evidence and logic. Again, the trial court found that no evidence was introduced showing that Dr. Primus' patients came from all sectors of the 50 mile radius in which the Clinic practiced, and therefore, the covenant was too broad geographically. The logic fails. If Dr. Primus practiced in *any* sector of the 50 mile radius, she violated the covenant. Her patients could come from anywhere, as long as *she* was not within that 50 miles. The undisputed evidence showed that the Clinic's patient service area was at least a 50 mile radius. The covenant was reasonable.

The trial court's conclusion that the non-compete agreements were not enforceable and the findings used to support this conclusion are not supported by the evidence in the record. In other words, they are clearly erroneous and must be set aside.

Another conclusion reached by the trial court was that the Clinic itself breached the agreement it sought to enforce against Dr. Primus and it could not itself breach the agreement and at the same time choose selected portions of the agreement to enforce. To support this conclusion, the trial court found as fact that the Clinic failed to render an accounting to Dr. Primus when she left and to pay her in accord with the schedule contained in the agreements. The trial court further found that Dr. Primus was required to file suit to compel the Clinic to pay her what it owed her for services rendered and that it was the filing of the suit that prompted the Clinic to file a counterclaim seeking enforcement of the covenant.

■ Nowhere in the record is any scintilla of evidence to support such a finding. Originally, Dr. Primus filed suit alleging such a breach. However, that complaint was dismissed. The only claim for the trial court's consideration was the Clinic's cross-claim against Dr. Primus seeking to enforce the covenant. Therefore, the trial court could not consider any allegations in the pleadings of the dismissed action. *See Red 73 Creamery, Inc. v. Lumbermen's Mut. Cas. Co.* (1965), 138 Ind.App. 273, 209 N.E.2d 896. And no mention was made during the declaratory judgment hearing of any breach on the part of the Clinic. This holding by the trial court was made wholly without support from the evidence and was clearly erroneous.

Finally, the trial court found that the covenant not to compete, including the liquidated damages provision of the partnership agreement, was inconsistent with the covenant not to compete contained in the associate partner agreement in that the latter agreement did not contain the liquidated damages clause.

Rules of contract construction were discussed by this Court in *R.R. Donnelley & Sons v. Henry-Williams, Inc.* (1981), Ind. App., 422 N.E.2d 353.

"It is the duty of the court to interpret a contract so as to ascertain the intent of the parties. It must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Evansville-Vanderburgh School Corp. v.*

*Moll* (1976), 264 Ind. 356, 344 N.E.2d 831. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Evansville-Vanderburgh School Corp., supra; Oser v. Commercial U. Ins. Companies* (1980), Ind. App., 409 N.E.2d 706.

"In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Shahan v. Brinegar* (1979), Ind. App., 390 N.E.2d 1036." 422 N.E.2d at 356.

In light of these rules of harmony, an examination of the covenants fails to reveal the inconsistency found by the trial court.

A court does not construe the terms of a contract unless they are ambiguous, and the test for determining whether a contract is ambiguous is whether reasonable men would find the contract subject to more than one interpretation. *Fort Wayne Cablevision v. Ind. & Mich. Elec.* (1983), Ind.App., 443 N.E.2d 863. In signing the associate partner agreement, Dr. Primus agreed to the provision of the agreement which bound her to the partnership agreement. Both agreements contained covenants not to compete which were the same except that one contained a liquidated damages provision. By signing the one agreement, she was bound by both agreements and both covenants, including the liquidated damages clause. The covenants do not conflict, but instead can be considered in harmony.

Where the language of a contract is plain as to the intent of the parties, that language is conclusive. Dr. Primus is a well-educated and well-informed individual who consulted with her counsel before signing the agreement. She knew she was bound by the terms of the partnership agreement and its amendments. The intent of the parties at the time the contract was made is exemplified in the record. The minutes of the trustees' meeting of November 8, 1977 state that Dr. Primus agreed to pay the $25,000 on a time-payment basis of approximately $1,000 per month. In subsequent meeting minutes there appears a counter offer from Dr. Primus to pay $10,000. There is no question about what the parties intended in so far as the liquidated damages provision and there is no evidence to support a finding that their intent was otherwise.

For the reasons asserted above this cause is remanded for findings not inconsistent with this opinion.

Reversed and remanded.

STATON, J., concurs.

GARRARD, J., concurs in result.