901 N.E.2d 602 (2009)
Gloria BENEFIELD, Appellant/Defendant,
v.
STATE of Indiana, Appellee/Plaintiff.
No. 41A01-0806-CR-272.
Court of Appeals of Indiana.
February 25, 2009.
*605 Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BRADFORD, Judge.
Appellant/Defendant Gloria Benefield appeals following her conviction for Class C felony Forgery.[1] Benefield contends that the State failed to produce sufficient evidence to sustain her conviction, that the trial court abused its discretion in instructing the jury, that the trial court abused its discretion in sentencing her, and that her sentence is inappropriate in light of the nature of her offense and her character. We affirm.

FACTS AND PROCEDURAL HISTORY
On March 23, 2005, Benefield applied for a health-care provider position with Regency Place in Greenwood and interviewed with Sabra Stark. Specifically, Benefield applied for a position as a Qualified Medication Aide ("QMA"), for which one needs certification from the Indiana Department of Health. To that end, Benefield produced a document that appeared to be an "Aide Registry" issued by the Department of Health. Although the document indicated that Benefield was certified as a QMA, Stark noticed that both the QMA certification number and QMA expiration date listed on the document appeared to be in a typeface inconsistent with the rest of the document.
After the interview, Stark called an automated telephone service to verify Benefield's certifications, only to learn that Benefield was not certified as a QMA. In fact, neither the QMA certification number nor the expiration date listed on the "Aide Registry" were valid. Moreover, the Department of Health does not issue corrected "Aide Registry" letters with the corrections in a different typeface, instead preparing new documents when information has changed.
On September 2, 2005, the State charged Benefield with Class C felony forgery and with being an habitual offender. Before Benefield's jury trial on August 8, 2007, both parties stipulated to the admissibility *606 of several exhibits, including Aide Registry letters from the Department of Health dated May 13, 2005, and August 1, 2007, which were tentatively identified as State's Exhibits 4 and 5 respectively. At trial, Department of Health Program Director of Administration Darlene Jones testified regarding the Aide Registry letters without objection, although they were not, in fact, actually admitted into evidence. Jones's testimony regarding the May 13, 2005, Aide Registry letter was generally comparing it to the Aide Registry letter produced by Benefield to point out differences in typeface, and her testimony regarding the August 1, 2007 letter was generally to establish that it was an example of an original Aide Registry letter. Jones also testified regarding a document that was marked as State's Exhibit 7, but which was not actually entered into evidence. Jones testified that State's Exhibit 7 was a document from the Department of Health establishing that Benefield had taken and failed the QMA certification test twice in 2004.
After the presentation of evidence, the trial court instructed the jury, inter alia, that "`Defraud' means to make a misrepresentation of an existing material fact, knowing it to be false, or making it recklessly without regard to whether it is true or false." Appellant's App. p. 74. Benefield unsuccessfully objected to this instruction only on the basis that it was apparently drawn from Black's Law Dictionary. After the jury found Benefield guilty as charged, she agreed to plead guilty to the forgery charge (thereby forfeiting the right to challenge her conviction) in exchange for the State agreeing not to seek the habitual offender enhancement. On October 1, 2007, Benefield moved to withdraw her guilty plea to forgery, which motion the trial court granted. On March 25, 2008, the parties stipulated that Benefield had the required prior unrelated felonies necessary to support an habitual offender enhancement. On March 28, 2008, the trial court sentenced Benefield to eight years of incarceration for forgery, enhanced by six years by virtue of the habitual offender finding. The trial court found Benefield's criminal history and the failure of less-harsh correctional measures to be aggravating circumstances and found no mitigating circumstances.

DISCUSSION AND DECISION

I. Whether the Trial Court Abused its Discretion in Admitting Testimony Regarding Documents that Were Not Entered into Evidence
Benefield contends that the State's failure to offer into evidence its Exhibits 4, 5, and 7 prevented any witness from properly testifying regarding the contents of those exhibits.[2] Benefield, however, did not object to any witness testimony regarding the documents in question and has therefore waived the issue for appellate review. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him.[3]Purifoy v. State, *607 821 N.E.2d 409, 412 (Ind.Ct.App.2005), trans. denied (citation omitted).
In any event, Benefield points to no authority providing that a witness may not testify regarding a document not admitted into evidence. Benefield cites to Harris v. Primus, 450 N.E.2d 80, 83 (Ind.Ct.App. 1983), for the proposition that a witness may not discuss a document that has not been admitted into evidence. Benefield's reliance on Harris, however, is misplaced. Harris stands only for the proposition that a fact-finder may not consider testimonial evidence, such as a deposition, if it has not been admitted into evidence, but not that a fact-finder cannot consider testimony regarding items that have not been admitted. Id. Benefield also contends that State's Exhibit 3, which is apparently a third-generation copy of the Aide Registry letter produced by Benefield during her interview with Stark, violates the best evidence rule and should not have been admitted. We need not address this argument, however, because Benefield again failed to object to the admission of this exhibit and has therefore waived the issue for appellate consideration. See Purifoy, 821 N.E.2d at 412.

II. Whether the Trial Court Abused its Discretion in Instructing the Jury
As previously mentioned, Final Instruction 6 provided that "`Defraud' means to make a misrepresentation of an existing material fact, knowing it to be false, or making it recklessly without regard to whether it is true or false." Appellant's App. p. 74. Benefield contends on appeal that this definition of "defraud" given to the jury impermissibly lowers the mens rea for forgery, which requires, as charged here, an intent to defraud.
It is well-established that instructing the jury is within the discretion of the trial court. White v. State, 846 N.E.2d 1026, 1032 (Ind.Ct.App.2006), trans. denied. Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. Id. As previously mentioned, Benefield objected at trial to Final Instruction 6 on the ground that it was a definition apparently taken from Black's Law Dictionary, a different ground than the one she advances on appeal. As such, Benefield has waived the issue for appellate review. See Proffit v. State, 817 N.E.2d 675, 685 (Ind.Ct.App.2004), trans. denied.
Benefield attempts to avoid the effects of her waiver by contending that Final Instruction 6 amounted to fundamental error. Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible. White, 846 N.E.2d at 1032. To be considered fundamental, an error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." Spears v. State, 811 N.E.2d 485, 489 (Ind.Ct.App.2004).

A. Whether Final Instruction 6 was Erroneous
We conclude that the instruction in question impermissibly instructed the jury that it could convict upon merely a "reckless" state of mind, when the forgery statute requires that the making, uttering, or possession of the written instrument in question be done with the "intent to defraud[.]" *608 Ind.Code § 35-43-5-2(b). In other words, a mere reckless disregard for the truth or falsity of the instrument is not enough; we conclude that knowledge that the information in the instrument is false is required.
This conclusion is consistent with Indiana precedent on the question. As the Indiana Supreme Court has concluded, "An intent to defraud involves an intent to deceive and thereby work a reliance and injury." Wendling v. State, 465 N.E.2d 169, 170 (Ind.1984) (emphasis added). In our view, a mere reckless disregard for the truth of information in a written instrument is inconsistent with an intent to deceive; one simply does not have the intent to deceive if one does not believe the information is false. To the extent that Final Instruction 6 suggests that a person making a representation with reckless disregard for its truth may have the intent to deceive, we conclude that it is not a proper statement of the law.

B. Whether Final Instruction 6 Necessitates Reversal
As previously mentioned, Benefield contends that Final Instruction 6 constituted fundamental error, denying her due process. In some cases, a jury instruction that misstates the mens rea amounts to fundamental error. See, e.g., Greer v. State, 643 N.E.2d 324, 327 (Ind. 1994) (concluding that instruction that a defendant could "knowingly" commit attempted murder was fundamental error). Such an error can be cured, however, where the jury was otherwise sufficiently informed of the proper mens rea. Id. at 326-27.
When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions[.] There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law.
Boesch v. State, 778 N.E.2d 1276, 1279 (Ind.2002) (citations omitted).
Here, preliminary jury instructions included the charging information, which read, in part, that "[o]n or about March 23, 2005, in Johnson County, Indiana, Gloria Benefield, with intent to defraud, did make or utter a written instrument, to-wit: an Indiana Aide Registry Letter, in such a manner that it purported to have been made with different provisions." Appellant's App. p. 52 (emphasis added). Final Instruction 4 first tracked the language of Indiana Code section 35-43-5-2(b) and then specifically informed the jury of the elements that it must find beyond a reasonable doubt, thereby informing the jury twice more that Benefield must have had the "intent to defraud" in order to be guilty of forgery. Appellant's App. p. 72. Additionally, the State, in its opening statement, recited the statutory definition of forgery, including the required "intent to defraud[.]" Tr. p. 30. In summary, even though the jury was misinformed once regarding the proper mens rea for forgery, it was properly informed four times, including three times by the trial court. This repetition of the proper mens rea, especially because it came mostly from the trial court, very likely would have cured the error by itself. See Perez v. State, 872 N.E.2d 208, 212 (Ind.Ct.App.2007) (concluding that trial court's two instructions stating proper mens rea for attempted murder cured instruction that defendant could "knowingly" commit attempted murder), trans. denied. There is more, however.
*609 The jury was also instructed that it was "to consider all the instructions as a whole and [] to regard each with the others given to you" and not to "single out any certain sentence, or any individual point or instruction and ignore the others." Appellant's App. p. 49. Finally, we would note that while the jury was instructed on the legal meaning of the term "intentionally," it was not given the legal meaning of "recklessly." In our view, the lack of any elaboration on the concept of recklessness made it even less likely that the jury was focused on it. We conclude that, while Final Instruction 6 misstated the law, the repeated statements of the proper mens rea, the trial court's instruction not to consider any one instruction in isolation, and the lack of any other mention of "recklessness" prevented the occurrence of fundamental error in this case.[4]

III. Sentence

A. Abuse of Discretion
Under Indiana's current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind.2007). We review the sentence for an abuse of discretion. Id. An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." Id.
A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentenceincluding a finding of aggravating and mitigating factors if any but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." Id. at 490-91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. However, under the new statutory scheme, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. Id.
Benefield contends that the trial court abused its discretion in declining to find, as a mitigating circumstance, the hardship her incarceration would work on her mother. A trial court is not obligated to find a circumstance to be mitigating merely because the defendant advances it. Felder v. State, 870 N.E.2d 554, 558 (Ind.Ct.App.2007). In particular, a trial court is not required to find that a defendant's incarceration would result in undue hardship on her dependents. Roney v. State, 872 N.E.2d 192, 204 (Ind. Ct.App.2007), trans. denied. Many persons convicted of crimes have dependents and, absent special circumstances showing that the hardship to them is "undue," a trial court does not abuse its discretion by not finding this to be a mitigating factor. Id. at 204-05.
While acknowledging that Benefield's incarceration would be difficult on her mother, the trial court also concluded that the "burden must be unusual" for it to be a mitigating circumstance. Tr. p. 253. *610 This view is consistent with our jurisprudence that special circumstances must establish the hardship as "undue." The record indicates that while Benefield has been shouldering much of the load of caring for her mother, it does not indicate that her mother will be entirely without assistance without Benefield. Benefield's mother, in a letter to the trial court, noted that Benefield was the only one who took her to her doctor's appointments, but not that she was the only one who could. The record also indicates that Benefield has a sister who lives in Johnson County, and while that sister indicated that Benefield was a "tremendous help when it comes to taking care of [their] mother[,]" she did not indicate that such care would be impossible without Benefield. Defendant's Sentencing Ex. C. We recognize, of course, that incarceration almost always works a hardship on others, but, as Benefield failed to show special circumstances, the trial court did not abuse its discretion in finding that the hardship was not undue.
Benefield also argues that her vision problems and her participation in a nursing and criminal justice program at the University of Indianapolis should have been found to be mitigating circumstances. Benefield, however, does not claim that her eye surgery could not be performed by private individuals while she was incarcerated, only that the Department of Correction would not provide it. Additionally, Benefield was allowed to post an appeal bond, and although the trial court placed her on home detention, she does not argue that she was denied the opportunity to receive the necessary medical care, or even that she requested such an opportunity. As for Benefield's participation in higher education, she does not claim that she will be unable to pursue her studies while incarcerated or, for that matter, explain why her studies should be considered mitigating. Benefield has not established that the trial court abused its discretion in sentencing her.

B. Appropriateness
Benefield also contends that her maximum eight-year sentence for forgery is inappropriate. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." Shouse v. State, 849 N.E.2d 650, 660 (Ind.Ct.App.2006), trans. denied (citations and quotation marks omitted).
Benefield's character is that of a perpetual perpetrator of crimes of dishonesty who has yet to conform her behavior to the norms of society. Benefield's criminal history begins in 1979, when she was thirty or thirty-one years old, and she has prior convictions for felony grand theft, two counts of check deception, two counts of Class A misdemeanor check deception, Class A misdemeanor criminal conversion, Class C felony forgery, five counts of Class D felony fraud, and two federal counts of credit card fraud. It is worth noting that the total amount of money involved in the federal case was $112,000.54. Benefield's numerous contacts with the criminal justice system, including her several incarcerations and stints on probation, have not caused her to reform herself. Benefield's character justifies her eight-year maximum sentence.
*611 The nature of Benefield's crime also strikes us as somewhat more serious in nature than a typical forgery, in that it had the potential to place others at risk. Had Benefield's forgery had its intended effect, she would have been working in a health-care position for which she was not legally qualified. We cannot take lightly an attempt to evade Indiana's requirements for the licensing of health-care providers. Benefield has failed to convince us that her eight-year sentence is inappropriate in light of the nature of her offense and her character.
The judgment of the trial court is affirmed.
FRIEDLANDER, J., and MAY, J., concur.
NOTES
[1] Ind.Code § 35-43-5-2(b)(3) (2004).
[2] Benefield frames this issue as a challenge to the sufficiency of the evidence to sustain her conviction for forgery. Benefield, however, only challenges the admission of certain evidence and does not claim that the evidence, if properly admitted, was insufficient to sustain her conviction. As such, we shall consider Benefield's argument as a challenge to the admission of evidence.
[3] This case is one in which application of the contemporaneous objection rule seems particularly appropriate. Given that Benefield had already stipulated to the admissibility of State's Exhibits 4 and 5, it seems certain that they would have promptly been admitted had it been pointed out that they had not been. Benefield also makes no claim that State's Exhibit 7 was in any way inadmissible.
[4] An instruction erroneously informing the jury on the required mens rea can also be cured if the defendant's intent is not a central issue at trial, although we need not reach the issue in this case. See Williams v. State, 737 N.E.2d 734, 737 (Ind.2000).