Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**MICHAEL J. WRIGHT**
Wright, Shagly & Lowery, P.C.
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana



FILED
Jul 26 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOUGLAS L. CHUBB, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 77A04-1110-CR-519 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SULLIVAN SUPERIOR COURT
The Honorable Robert E. Springer, Judge
Cause No. 77D01-0906-FB-98

**July 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Douglas L. Chubb ("Chubb") was convicted in Sullivan Superior Court of Class B felony robbery. Chubb appeals and presents three issues, which we restate as:

I.    Whether the trial court abused its discretion in denying Chubb's oral motion to continue made on the day of trial;

II.   Whether the State presented sufficient evidence to support Chubb's conviction; and

III.  Whether the trial court abused its discretion by failing to consider certain mitigating factors when sentencing him to twelve years incarceration, with two of those years suspended to probation.

We affirm.

**Facts and Procedural History**

Shortly before noon on April 7, 2009, Chubb walked into the Harris Bank in Farmersburg, Indiana wearing a gray hooded sweatshirt pulled up close to his face. The sweatshirt was gray but had a liner of a darker color. Chubb also had a black mask covering the lower part of his face and wore sunglasses that covered most of the upper part of his face. Chubb approached Pam Bartley ("Bartley") and Debra Thompson ("Thompson"), who were the only employees at the bank that day. Chubb pointed a small, black semi-automatic handgun at Thompson's face and ordered her to go into the bank vault and get cash. Bartley told Thompson to do what Chubb said.

While Thompson attempted to open the vault, Chubb pointed the gun at Bartley. Bartley noticed that Chubb had a distinctive, raspy voice and also had a particular speech pattern in which he would raise his voice while making a command, then lower his voice and repeat the command. He also called both Thompson and Bartley "ma'am." Tr. p. 288. Bartley saw Chubb's eyes at one point when he lowered his sunglasses and noticed

2

that he had blue eyes with "crows feet" wrinkles and that one eye "drooped" more than the other. Tr. p. 284. Chubb ordered Bartley to remove cash from the cash registers and warned her not to set off any alarms or give him any traceable money. Thompson was eventually able to open the vault and placed a large amount of cash on the bank counter, which Chubb took. After placing the cash in the pockets of his sweatshirt, Chubb ordered Bartley and Thompson into the vault and told them to shut the vault doors and remain there for five minutes. They remained in the vault until they heard the bank door signal that someone had left. They then locked the doors and telephoned the police. Chubb absconded with over $27,729 in cash. Most of the cash was in large bills, but the amount also included $242 in the relatively rare two-dollar bills.

Shortly thereafter, Chubb met John Sandberg for lunch at a local bar. Chubb had called Sandberg earlier that day and insisted that Sandberg should call him before he left his house and then again after he left his house. When they met at the bar, Sandberg told Chubb that he thought "the bank might have just got robbed." Tr. p. 360. Chubb then telephoned someone and told them "the Harris Bank just got robbed." Id. Sandberg replied to Chubb, "I never said Harris Bank." Id. After that, Chubb was not interested in talking about the robbery with Sandberg.

When the police arrived at the bank, they viewed the video recorded by the bank's security cameras. Although this video was low quality and "grainy," the police were able to discern that the robber had been wearing a gray hooded sweatshirt with a dark liner and had a gun in his hand. The police also went to surrounding businesses to see if they had security cameras that happened to record any of the events at the bank. A

3

neighboring Dairy Queen restaurant had a high-quality video recording that showed a silver 2002 Chevrolet Cavalier coming from the direction of the bank at a high rate of speed at the same time that Chubb had left the bank. The driver of the Cavalier was wearing a gray hooded sweatshirt or jacket. The Cavalier also had several identifying characteristics, including a rear spoiler, a front license plate bracket with no license plate, an oval-shaped decal on the lower left part of the driver's side door window, and a sticker of an American flag with an eagle's head on the outside driver's side mirror. A similar sticker was on the back door window on the driver's side of the car.

More than a month later, on May 24, 2009, a Sullivan County Sheriff Deputy was driving his patrol car on U.S. Highway 41 when he noticed a silver Cavalier that matched the description of the car in the surveillance video. The deputy ran the license plate of the Cavalier and discovered that the car was registered to Chubb and his son. Chubb was also a suspect because he had paid off his son's $11,650 restitution debt to the Sullivan County Clerk in cash.

On June 4, 2009, Chubb entered the Harris Bank again, this time wearing a large, black cowboy hat. He went to a teller and asked for "mint coins." Tr. pp. 133, 294. Although Bartley was not assisting Chubb, she heard his voice and recognized it from the bank robbery. Frightened that Chubb was going to rob the bank again, Bartley looked at Chubb and asked him who he was and if he was a customer of the bank. Chubb identified himself as "Doug Chubb," and stated that he was a customer. Bartley moved closer to Chubb and began to converse with him about coin collecting. After getting a closer look at his eyes, and hearing his voice, Bartley was certain that Chubb was the man

4

who had robbed the bank. After Chubb left the bank, Bartley called Indiana State Police Detective Hans Nowak ("Detective Nowak"), who was investigating the bank robbery. Bartley was unaware that Chubb had already been identified as a suspect in the bank robbery.

Based on the information obtained from Bartley, the State Police obtained a warrant to search Chubb's house, outbuildings, and his Chevrolet Cavalier. When the police executed the warrant and searched Chubb's home, they found a light gray sweatshirt with a dark fleece lining. They also found several two-dollar bills and two thousand-dollar "money wrappers." Tr. p. 159. When the police located Chubb's Cavalier, they observed that it had a rear spoiler, a front license plate bracket with no plate, and stickers consistent with the car seen in the surveillance video obtained from the Dairy Queen.

On June 8, 2009, the police met with Chubb's acquaintance Sandberg, and informed him that they had executed a search warrant at Chubb's home. Sandberg informed the police that Chubb had told him that the police were investigating Chubb's son as a suspect in the bank robbery and had asked Sandberg to keep a small, black semi-automatic handgun for him. Sandberg gave the weapon to the police. Sandberg also told the police that when he and Chubb gambled together, Chubb was known to carry large amounts of cash and had a habit of exchanging newer twenty dollar bills for older ones and even exchanged newer one-hundred dollar bills for older twenty dollar bills.

On June 10, 2009, the State charged Chubb with Class B felony robbery. A four-day jury trial was held between November 16 and November 19, 2010, but the jury could

5

not reach a unanimous verdict. The trial court declared a mistrial, and set a new trial date of August 23, 2011. On the morning of the second trial, before the jury was selected, the local newspaper ran a front-page story noting that Chubb's new trial was about to begin and that the earlier trial had ended in a hung jury. The story also contained a quote from an anonymous juror from the first trial who told the paper that the jury was deadlocked with seven jurors voting to convict, and five voting to acquit. Chubb's counsel was aware of the article and made an oral motion to continue the trial and requested that jurors be selected from another county. The trial court denied the motion, but did question the jury panel regarding the article in that morning's newspaper. One member of the jury panel had seen the newspaper that morning but had not read the article. Another member of the jury panel had delivered that morning's newspaper. Although this potential juror had not read the article, he did overhear a discussion about it. A jury was selected and the trial court admonished the jury not to read the contents of the newspaper.

On August 28, 2011, the jury found Chubb guilty as charged. At a sentencing hearing held on September 12, 2011, the trial court sentenced Chubb to twelve years with two of these years suspended to probation. Chubb now appeals.

## I. Motion to Continue

Chubb first claims that the trial court abused its discretion in denying his oral motion to continue made the day of trial. Chubb recognizes that this motion was made

6

on non-statutory grounds.[1] Rulings on non-statutory motions for continuance lie within the discretion of the trial court, and we will not reverse the trial court's rulings on such motions absent an abuse of that discretion and resultant prejudice. Tolliver v. State, 922 N.E.2d 1272, 1281 (Ind. Ct. App. 2010), trans. denied. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id. This is a showing that Chubb fails to make.

Chubb claims that the effect of the newspaper article was prejudicial, but this ignores the fact that both members of the venire who indicated that they had seen the newspaper that morning stated that they had not actually read the article. The trial court not only admonished the panel not to read the article, but both of the potential jurors who saw the article were ultimately dismissed and did not sit on the final jury panel. See Tr. pp. 10-11, 67-68, 94. We are therefore at a loss as to how Chubb was prejudiced based on the effect the newspaper article might have had on the jury when none of the jurors actually saw or read the article.[2] The trial court did not abuse its discretion in denying Chubb's morning-of-trial motion to continue.

## II. Sufficiency of the Evidence

Chubb also claims that the State failed to present sufficient evidence to support his conviction for burglary. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses.

---

[1] As noted in Tolliver, Indiana Code section 35-36-7-1 provides for motions to continue trial for various reasons. See 922 N.E.2d at 1281 n.4. Chubb makes no argument that this statute is applicable to his motion to continue.

[2] Chubb claims that it is "unlikely" that only one of the sixty potential jurors saw the local newspaper that morning. This is simply a request that we second-guess the credibility of the jurors, which we will not do.

We respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

To convict Chubb of Class B felony robbery, the State was required to prove beyond a reasonable doubt that Chubb, while armed with a deadly weapon, knowingly or intentionally took property from another person by threatening the use of force on any person or by putting any person in fear. See Ind. Code § 35-42-5-1. Chubb does not dispute that there was evidence to support that *someone* committed these elements; he claims that there was simply insufficient evidence to establish that *he* was the one who committed these acts. That is, he claims that there was insufficient evidence to establish the identity of the robber. We disagree.

There was some direct evidence identifying Chubb as the robber. Bartley, who was unaware that Chubb was already a suspect, recognized Chubb's distinctive voice and his "droopy" eye when he returned to the bank and identified him as the robber. There was also ample circumstantial evidence from which a reasonable trier of fact could have concluded that Chubb was the robber. Chubb owned a vehicle that matched the one recorded fleeing from the scene immediately after the robbery. When he was under investigation, Chubb asked his friend to hold a handgun of Chubb's which matched the description of the handgun used by the robber. Chubb paid a large debt in cash after the

8

robbery. Clothing matching that worn by the robber was found in his house, as were a large amount of relatively rare two-dollar bills. From this evidence, the jury could reasonable conclude that Chubb was the man who robbed the bank.

Chubb attempts to point out weaknesses in Bartley's testimony and notes that none of the money found at his house or in his possession was ever directly tied to the cash taken during the bank robbery. These arguments, however, are simply a request that we reweigh the evidence and reassess witness credibility, both of which we are prohibited from doing on appeal. See McHenry, 820 N.E.2d at 126. The evidence favorable to the jury's verdict, and the reasonable inferences drawn therefrom, are sufficient to support Chubb's conviction.

### III. Sentencing

Lastly, Chubb claims that the trial court abused its discretion in imposing a twelve-year sentence, with two of these years suspended to probation. Sentencing decisions rest within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. Id. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Id. at 491. A trial court may abuse its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the

9

record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law.  Id. at 490-91.

Here, Chubb notes that a trial court may consider as a mitigating circumstance that "[i]mprisonment of the person will result in undue hardship to the person or the dependents of the person."  Ind. Code § 35-38-1-7.1(b)(10).  Chubb claims that "[t]he record is well established regarding the current health of Chubb; a partial list of his conditions are listed in the pre-sentence report, as well as in testimony from trial."  Appellant's Br. p. 13.  He then asserts "[t]here is no question the imprisonment of Chubb creates an undue hardship."  Id.

Chubb does not explain whether his imprisonment would create an undue hardship to himself, his dependents, or both.  It appears, however, that Chubb's argument is that imprisonment would be an undue hardship to himself because of his health problems.[3] The trial court did not wholly overlook Chubb's health claims, but it did not find his health issues to be a mitigating circumstance.  See Appellant's App. p. 49.  Furthermore, Chubb refers us to nothing in the record that would indicate that his conditions would be untreatable during incarceration.  Nor does he explain how a lesser term of incarceration would be less of a hardship.  We therefore cannot say that the trial court abused its discretion in failing to consider Chubb's health issues as a mitigating factor.  See Henderson v. State, 848 N.E.2d 341, 344-45 (Ind. Ct. App. 2006) (concluding that trial

---

[3]  To the extent Chubb's argument is one of undue hardship on his dependents, we would observe that many persons convicted of crimes have dependents and, in the absence of special circumstances showing an excessive undue hardship, a trial court does not abuse its discretion by failing to consider it as a mitigating circumstance.  Benefield v. State, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), trans. denied.

court did not abuse its discretion in failing to consider defendant's poor health to be a mitigating circumstance where defendant took medication for most of her conditions and did not present any evidence that her medical conditions would be untreatable during incarceration).

Chubb also claims that the trial court abused its discretion in considering his prior convictions as an aggravating circumstance. Chubb notes that both of his prior convictions were misdemeanors and further notes that one conviction occurred in 1981 and the other in 1996. He then claims, "[t]he use of two misdemeanor convictions, the latest of which was thirteen (13) years prior to the robbery, is improper." Appellant's Br. p. 13. However, it is clear that "a history of criminal or delinquent behavior" may be considered as a valid aggravating factor. I.C. § 35-38-1-7.1(a)(2).

Thus, Chubb's claim can only be that the trial court gave improper aggravating weight to Chubb's prior criminal history. However, we may not review the relative weight or value assigned to aggravating and mitigating circumstances. Anglemyer, 868 N.E.2d at 491; Webb v. State, 941 N.E.2d 1082, 1088 (Ind. Ct. App. 2011) ("The relative weight given to aggravating and mitigating factors is not subject to review."), trans. denied.

Chubb has failed to establish that the trial court abused its discretion in imposing a twelve year sentence with two of those years suspended to probation.

**Conclusion**

The trial court did not abuse its discretion in denying Chubb's motion for a continuance, and the State presented sufficient evidence to establish that Chubb was the

11

individual who robbed the bank. The trial court did not abuse its discretion in sentencing Chubb to twelve years, with ten years executed and two suspended to probation.

Affirmed.

ROBB, C.J., and BAILEY, J., concur.