## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 08 2015, 8:33 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Steven E. Ripstra | Gregory F. Zoeller |
| Ripstra Law Office | Attorney General of Indiana |
| Jasper, Indiana | |
| | Christina D. Pace |
| | Deputy Attorney General |
| | Indianapolis Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric L. Carter, | July 8, 2015 |
| *Appellant-Defendant*, | Court of Appeals Case No. 63A01-1412-CR-527 |
| v. | Appeal from the Pike Circuit Court |
| State of Indiana, | The Honorable Jeffrey L. Biesterveld, Judge |
| *Appellee-Plaintiff*. | Cause No. 63C01-1403-FB-124 |

**Brown, Judge.**

[1] Eric L. Carter appeals his sentence for possession of a firearm by a serious violent felon as a class B felony. Carter raises two issues which we revise and restate as:

    I.    Whether the trial court abused its discretion in sentencing him; and

    II.   Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] On June 30, 2011, Carter was convicted of Count I, burglary as a class C felony, and Count II, burglary as a class B felony, under cause number 63C01-0902-FB-76 ("Cause No. 76").

[3] On June 14, 2013, Carter knowingly possessed a firearm or firearms, specifically a "RG 22 caliber revolver" and an "Iver Johnson 32 caliber revolver." Transcript at 16. On March 31, 2014, the State charged Carter with unlawful possession of a firearm by a serious violent felon as a class B felony under cause number 63C01-1403-FB-124 ("Cause No. 124"). On April 1, 2014, the State filed a motion to revoke probation under Cause No. 76. On August 4, 2014, the State charged Carter with theft as a class D felony under cause number 63C01-1408-FD-355 ("Cause No. 355").

[4] On October 7, 2014, pursuant to the terms of a plea agreement, Carter pled guilty to unlawful possession of a firearm by a serious violent felon as a class B felony under Cause No. 124, he agreed to admit to the violation of the terms of

his probation in Cause No. 76, he agreed to a cap of twelve years on his total sentence, and the State agreed to dismiss the charges in Cause No. 355.

[5] On November 12, 2014, the court held a sentencing hearing. Carter's father testified that he received a lung transplant in July, that he would have to find someone in the family to help him or hire someone should Carter be incarcerated, and that he had hired someone to help him for the last few months but that paying someone was a financial strain. He testified that after Carter became a felon, they discussed guns and that Carter was not to own or possess one. He indicated that Carter told him that Carter had guns as collateral for a loan and "was just holding them for the night" and "some people were coming back to pick 'em up the next day." *Id.* at 53. He also testified that the guns were not loaded and on a shelf in a closet.

[6] Carter testified that he told his father around 2001 after he was convicted that his father needed to take his guns or find somebody to buy them. He testified that if he had known "the concept of possessory interest is the equivalent of actual possession under this statute, we wouldn't be having this hearing today." *Id.* at 71. With respect to the guns the State alleged he possessed, Carter stated that he had no interest in the guns "other than that they were an assurance that [he] was going to get [his] money back." *Id.* at 66. He testified that he could not reach the shelf where the guns were stored because he had a full arm cast on one arm, his fingers were sprained and swollen, and he had a broken neck with a rigid neck brace. He stated that the police knocked on the door to his father's house and said they had talked to "the guys that the firearms came from" and

that they knew the firearms were in the house. *Id.* at 67. He testified that he initially pretended like he had no idea what the officers were talking about, but one of the officers said he knew that Carter was on probation, that Carter could either cooperate and let the police gain access to the firearms, or he would go with them. He provided a written statement to the police naming two individuals involved in his receipt of the guns. During cross-examination, Carter admitted that the written statement he made to the police when they came to his house was not a true and accurate statement because he was under the impression that if he did "what they wanted [him] to do, that this, that we weren't going to, that this wasn't going to be an issue." *Id.* at 79.

[7] At the hearing, the court found the most substantial aggravating factor to be Carter's criminal history. The court also found the fact that Carter was on probation at the time of the offense as an aggravator. The court stated that it considered the fact that Ind. Code § 35-50-2-2 "makes this a non-suspendable offense" and that "is because this is a Class 'B' felony and the person has a prior unrelated felony conviction." *Id.* at 93. The court also considered that prior lenient treatment, probation, and community corrections had not been successful. The court found Carter's guilty plea and that Carter "has made restitution in the original case, for which probation revocation is being sought" as mitigators. *Id.* The sentencing order found that Carter "did plead guilty and saved the Court's time and resources" as a mitigator. Appellant's Appendix at 157. The order stated that the court considered: (1) Carter's prior criminal history; (2) Carter was on probation at the time when the new offense was

committed; (3) prior lenient treatment and the prior consideration of probation and placement in community corrections had not been successful; (4) Carter's testimony that he knew he was not supposed to possess a firearm; and (5) Ind. Code § 35-50-2-2 makes this a non-suspendable offense "because this a [sic] call [sic] 'D' [sic] Felony and the Defendant has a prior non-related offense." *Id.* The court sentenced Carter to ten years under Cause No. 124 and two years under Cause No. 76 to be served consecutively.

## *Discussion*

### I.

[8] The first issue is whether the trial court abused its discretion in sentencing Carter. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have

imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

Carter argues that the trial court should have considered his cooperation with the police and how the cooperation led to two burglary convictions[1] and the undue burden on his father. He contends that the sentencing order omits the second mitigator that the court mentioned during the sentencing hearing that he made restitution in the original case for which probation revocation was being sought. Lastly, he asserts that "any argument made that the court abused its discretion when sentencing the defendant on the new charge in [Cause No. 124], should be applied to the probation violation proceedings." Appellant's Brief at 14-15.

The State argues that Carter's cooperation with the police was merely a pragmatic decision and downplays his involvement. With respect to the burden of incarceration on Carter's father, the State points out that Carter's adult sister and his mother are still living but there was no discussion of these family members at his sentencing hearing.

---

[1] Carter cites a letter he previously sent to the trial court dated November 3, 2014, to support his contention that his cooperation led to the arrests of two individuals.

The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Id.*

With respect to his cooperation with the police, the record reveals that Carter testified that he initially pretended like he had no idea what the police were talking about. He conceded during cross-examination that the written statement he made to the police when they came to his house was not a true and accurate statement. We cannot say that Carter has demonstrated that the mitigating evidence is both significant and clearly supported by the record.

As for the burden on Carter's father, "absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999); *see also Benefield v. State*, 904 N.E.2d 239, 247-248 (Ind. Ct. App. 2009) (recognizing that incarceration "almost always" works a hardship on others and concluding that the defendant failed to show "special circumstances" because there were other people who

could take care of the defendant's mother while she was incarcerated), *trans. denied*. Again, we cannot say that Carter has demonstrated that the mitigating evidence is both significant and clearly supported by the record.

[14] To the extent that Carter asserts that the sentencing order did not include his restitution as a mitigator, we observe that the trial court found that Carter's restitution in the original case for which probation revocation was being sought was a mitigator during the sentencing hearing. "The approach employed by Indiana appellate courts in reviewing sentences in non-capital cases is to examine both the written and oral sentencing statements to discern the findings of the trial court." *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). We examine the oral statement alongside the written sentencing statement to assess the conclusions of the trial court. *Id.* Under the circumstances, we cannot say that the court abused its discretion.[2]

## II.

[15] The next issue is whether Carter's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is

---

[2] Carter also argues that the sentencing order differs from the statement given by the court at the conclusion of the sentencing hearing because the order states that Ind. Code § 35-50-2-2 makes this a non-suspendable offense "because this a [sic] call [sic] 'D' [sic] Felony and the Defendant has a prior non-related offense." Appellant's Appendix at 157. We cannot say that the scrivener's error referring to the offense as a class D felony constitutes an abuse of discretion in sentencing Carter.

inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[16] Carter argues that he agreed only to accept the three guns as collateral for a loan, the guns were kept on a shelf in his father's house where he was living and he was unable to reach the shelf due to physical limitations, he consented to the police seizing the firearms and gave a written statement about how they came into his possession after the police promised not to arrest him or charge him with a firearm violation, his statement was ultimately used to convict two people of burglary, and he was unaware that merely having any property interest in a firearm qualified as a crime. With respect to his character, he argues that he is a college graduate, suffers from bipolar disorder, attention deficit disorder, and obsessive compulsive disorder, none of his previous offenses involved a firearm, he had less than two weeks remaining on his probation, he believed his medication was a factor in clouding his decision to accept a possessory interest in the guns, and he pled guilty.

[17] Our review of the nature of the offense reveals that Carter knowingly possessed a firearm or firearms as a serious violent felon. Our review of the character of the offender reveals that Carter pled guilty to unlawful possession of a firearm by a serious violent felon as a class B felony under Cause No. 124 and agreed to admit the violation of the terms of his probation in Cause No. 76, and the State agreed to dismiss the charge in Cause No. 355 of theft as a class D felony. As

an adult, Carter was convicted of illegal possession of alcohol by a minor as a class C misdemeanor in 1994, possession of marijuana as a class A misdemeanor in 1999, and operating a motor vehicle while intoxicated as a class A misdemeanor in 1999. In 1999, he pled guilty to possession of a controlled substance as a class D felony.[3] He was convicted of possession of marijuana as a class A misdemeanor, possession of marijuana as a class D felony, operating a motor vehicle while intoxicated as a class D felony in 2001; two counts of burglary as class C felonies, two counts of theft as class D felonies, and reckless driving as a class B misdemeanor in 2003; theft as a class D felony, criminal conversion as a class C misdemeanor, and possession of marijuana as a class A misdemeanor in 2006; burglary as a class C felony in 2007; burglary as a class C felony, burglary as a class B felony, and possession of paraphernalia as a class A misdemeanor in 2011.

[18] The presentence investigation report indicates that Carter had been diagnosed with attention deficit disorder, obsessive compulsive disorder, and bipolar disorder. Carter first started using alcohol at age nineteen, marijuana at age fifteen, and methamphetamine at age twenty. He also used or abused "Adderall (prescribed), cocaine powder, crack cocaine, hashish, ecstasy, heroin, LSD/acid, Librium/Valium (prescribed), marijuana, synthetic marijuana, Xanax, methamphetamine, opium, Ritalin (prescribed), Klonopin (prescribed) and peyote/mushrooms." Appellant's Appendix at 249. He has failed multiple

---

[3] The presentence investigation report indicates that the disposition for this offense is unknown.

drug screens while being under the supervision of the court by means of community corrections and/or probation. The report also indicates that Carter's overall risk assessment score puts him in the high risk category to reoffend.

After due consideration of the trial court's decision, we cannot say that the advisory sentence of ten years imposed by the trial court in Cause No. 124 and a consecutive two years in Cause No. 76 is inappropriate in light of the nature of the offense and the character of the offender.

## *Conclusion*

For the foregoing reasons, we affirm Carter's sentence.

Affirmed.

Crone, J., and Pyle, J., concur.