## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 07 2017, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jacob P. Wahl
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sammy Dale Joles,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 7, 2017

Court of Appeals Case No.
63A01-1704-CR-813

Appeal from the Pike Circuit Court

The Honorable Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-1609-F5-628

**Brown, Judge.**

[1] Sammy Dale Joles appeals his conviction for home improvement fraud as a level 5 felony. Joles raises one issue which we revise and restate as:

I. Whether the trial court abused its discretion in sentencing him; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

[2] Joles, a home improvement supplier, entered into a home improvement contract involving over $10,000 with Dennis Johnson, a person over sixty years of age, and misrepresented a material fact relating to the terms of the home improvement contract.

[3] On September 23, 2016, the State charged Joles with home improvement fraud as a level 5 felony. The trial court scheduled a jury trial for March 1, 2017. On February 13, 2017, the court held a final pretrial conference. On February 16, 2017, Joles filed a motion to continue, and the court granted the motion and rescheduled the jury trial to March 21, 2017.

[4] On February 24, 2017, Joles filed a Motion to Vacate Jury Trial and Set Change of Plea Hearing. On February 28, 2017, the court held a hearing, Joles

pled guilty, and the court accepted his plea and entered judgment of conviction.[1]

[5] On March 28, 2017, the court held a sentencing hearing. Mary McCandless testified that she had been engaged to Joles for two years and shared a residence with him, that he helped pay bills, that they live with her elderly mother, and that he was employed at McCandless Septic at the time of his arrest. Joles testified:

> Um, well, Your Honor, I was – just to be – I mean I was tired of the way that I was living and I know I made a lot of mistakes in the past. And I was ready to accept responsibility for my actions and change the way that I was living um, and get this [taken] care of. Get Mr. Johnson paid back. And be able to, you know, get a job and provide for my family. And uh, I do apologize to everybody. And, you know, Mr. Johnson. My – my family, for – for the way that I was. And uh, I – I just hope that whatever your sentence is that I can still pay restitution to Mr. Johnson and still provide for my family. I mean I – I – I – my drug problem has, you know, come and go over the years. At the time I was working for Mr. Johnson, it kind of flared up, so that I wasn't able to complete the job in a – in a reasonable amount of time. That's why the job never got finished and why Mr. Johnson got upset with me, so.

Transcript Volume II at 16.

---

[1] The record does not contain a transcript of this hearing. In his notice of appeal, Joles requested a transcript of only the March 28, 2017 sentencing hearing.

[6]     The court considered the presentence investigation report ("PSI") which stated his criminal history, that he was a high risk to reoffend, prior lenient treatment had not been successful, he was on parole or probation at the time of the offense, the harm suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense, he has a history of similar offenses involving theft and financial exploitation of elderly or disabled individuals, his attitude during the presentence investigation showed little remorse for his actions, and Joles has a history of non-appearance and has been extradited on two occasions for failure to appear in Missouri. The court found Joles's guilty plea and diagnosis of post-traumatic stress disorder ("PTSD") as mitigating factors and found that the aggravating factors substantially outweighed the mitigating factors and sentenced him to six years executed in the Department of Correction. The court also ordered Joles to pay restitution in the amount of $34,524.

### Discussion

### I.

[7]     The first issue is whether the trial court abused its discretion in sentencing Joles. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing

statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[8] Joles appears to argue that the trial court improperly failed to consider his ability to work and willingness to pay restitution with his ability to work and the hardship upon his dependents as mitigators. The State argues that there was no reason for the trial court to credit these circumstances as mitigating.

[9] The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and the court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the court does not

find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Id.*

[10] "[A]bsent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999); *see also Benefield v. State*, 904 N.E.2d 239, 247-248 (Ind. Ct. App. 2009) (recognizing that incarceration "almost always" works a hardship on others and concluding that the defendant failed to show "special circumstances" because there were other people who could take care of the defendant's mother while she was incarcerated), *trans. denied*. The PSI states that Joles was earning approximately $600 to $800 per week, was living rent free with his fiancée, and yet owed $813.13 in child support arrears. Under the heading "Dependents," the PSI indicates that Joles and his ex-wife have two children who live with Joles's mother in Wisconsin due to Joles's history of crimes and drug abuse. Appellant's Confidential Appendix Volume II at 63. We cannot say that he has demonstrated that hardship on his dependents is both significant and clearly supported by the record.

[11] As to his argument regarding his willingness to pay restitution, the charging information alleged that Joles entered into a home improvement contract between June 26, 2015, and October 15, 2015, and he does not point to the record to indicate that he paid any restitution prior to the date of the sentencing hearing on March 28, 2017. The PSI states:

> During the interview, [Joles] minimized the offense and demonstrated little to no remorse when discussing how his

> actions have impacted the victim. He stated, "I would have
> finished the job, but he fired me before I could". When I read the
> Victim Impact Statement to [Joles], he made reference that,
> although he shouldn't have kept all of the defendant's [sic]
> money, the victim shouldn't be suffering from that much
> hardship. During the entire interview, [Joles] showed absolutely
> no emotion.

*Id.* at 64. Under the circumstances, we cannot say that the court abused its discretion in not finding Joles's willingness to pay restitution as a mitigator or that the court abused its discretion in sentencing him.

## II.

[12] The next issue is whether Joles's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[13] Joles points to his PTSD, his guilty plea, his willingness and ability to pay restitution, and the hardship upon his dependents in arguing that he should receive less than the maximum sentence or a sentence that includes some portion on community corrections. The State argues that his sentence is not inappropriate to his offense and character.

[14]   Our review of the nature of the offense reveals that Joles, a home improvement supplier, entered into a home improvement contract involving over $10,000 with Dennis Johnson, a person over sixty years of age, and misrepresented a material fact relating to the terms of the home improvement contract. The victim impact statement states:

> I paid Sammy Dale Joles a total of $34,524.00. I paid $24,000.00 for a special ordered new shed which I never received. I paid for labor and items such as building materials more than once, for the same items. I feel I should receive compensation for my losses. I have experienced financial hardship, stress and a distrust of strangers. I don't think this man should be allowed to go free to scam others.

Appellant's Confidential Appendix Volume II at 67.

[15]   Our review of the character of the offender reveals that Joles, who was born on January 7, 1980, pled guilty five months after being charged. He was convicted of theft as a class C felony in 2004 and theft as a misdemeanor in 2012. he PSI indicates that he was charged with failure to support child as a felony in 2012, but lists the disposition as unknown. He was convicted of "Financial Exploitation-Elder" and theft as class C felonies in 2014. *Id.* at 62. That same year, he was convicted of possession of a controlled substance as a misdemeanor. The PSI states that Joles has convictions in Indiana, Missouri, Iowa, and Wisconsin, that he had an active warrant with full extradition in Missouri for a probation violation, he had a pending misdemeanor charge in Missouri, and that he reported he had been extradited twice to Missouri for

failure to appear for hearings. The PSI further states that his overall risk assessment score using the Indiana risk assessment system places him in the high risk to reoffend category.

[16] Under the heading "Mental Health," the PSI indicates that Joles reported he was diagnosed with having PTSD in early 2015 and that he stated: "I was on an extradition bus that crashed on the interstate. I had four guys on top of me; one was bloody and not moving." *Id.* at 64. He reported he was prescribed Alprazolam for PTSD treatment, but he had not been taking his medication as prescribed.

[17] Joles reported he had been addicted to illegal drugs for a majority of his adult life and had spent approximately $70,000 to $100,000 on illegal drugs. He was a daily user of methamphetamine prior to his arrest, and his substances of choice are opiates and Xanax. He has also used or abused "Adderall, Barbituates, cocaine powder, amphetamines, codeine, Librium/Valium, Ativan, crack cocaine, inhalents [sic], Morphine, synthetic marijuana, bath salts, Xanax, Oxycontin, Lortabs, Hydrocodone, Klonopin, and Salvia." *Id.* In 2014, a Polk County court ordered Joles to complete a drug/alcohol evaluation, but no treatment was recommended. He reported to the probation officer completing the PSI that he had intentionally lied and was dishonest to the counselor because he did not want to attend treatment. He reported that he would be willing to participate in any type of substance abuse treatment so he could start living a sober life.

The PSI states that Joles "minimized the offense and demonstrated little to no remorse when discussing how his actions have impacted the victim." *Id.* The PSI also states that prior leniency from the courts has not deterred Joles's criminal behavior.

After due consideration, we conclude that Joles has not sustained his burden of establishing that his sentence of six years is inappropriate in light of the nature of the offense and his character.

## Conclusion

For the foregoing reasons, we affirm Joles's sentence.

Affirmed.

Najam, J., and Kirsch, J., concur.